**Paul D. ELSWICK, II, Plaintiff,**

v.

**Loren NICHOLS, and Pikeville United Methodist Hospital, Inc., Defendants.**

No. CIV. A. 00–80.

United States District Court, E.D. Kentucky.

April 26, 2001.

---

### ORDER

HOOD, District Judge.

The defendants have moved to strike the plaintiff's experts [Record No. 101]. The defendants have also moved for summary judgment [Record No. 102]. The plaintiff has responded to both of these motions [Record Nos. 107 & 108]. The defendants have replied [Record No. 111]. In addition, the plaintiff has moved this Court [Record No. 104] to vacate the order which granted summary judgment to Defendant Dr. Loren Nichols [Record No. 103]. The defendants have responded [Record No. 109]. The time for additional responsive pleadings has lapsed without further filings. Therefore, these matters are ripe for review.

### Factual Background

Paul Elswick was severely injured in an automobile accident on June 22, 1998. He was transported to the Pikeville United Methodist Hospital and admitted to the emergency department. On June 25, 1998, Plaintiff underwent knee surgery which was performed by Dr. Loren Nichols. The leg became infected and culture testing from Elswick indicated that five types of infection were present in the area. However, the cultures do not indicate that Elswick contracted methicillin-resistant Staphylococcus aureus (hereinafter "MRSA"), as alleged in his complaint.

### Standard of Review

In determining whether to grant a motion for summary judgment, the Court must view the facts presented in a light most favorable to the non-moving party. *See Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 882 (6th Cir.1996). If the Court finds that there is no genuine issue of material fact, summary judgment may be granted. *See Street v. J.C. Bradford*, 886 F.2d 1472, 1479 (6th Cir.1989). The Sixth Circuit has held that "a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion." *Street*, 886 F.2d at 1478.

### Analysis

#### Overview

The plaintiff's case attempts to establish that Elswick's infection was caused by the defendants' negligence. In order to do this, Elswick must produce evidence which indicates that the defendants' breach of duty caused this infection. The Kentucky court system has described this type of proximate causation as "an indispensable element of culpable negligence." *Johnson v. Vaughn*, 370 S.W.2d 591, 597 (Ky.1963).

The plaintiff has had difficulty with the issue of causation[1]. His own expert witnesses, orthopedic surgeon Dr. William Kennedy, determined that there was "no reason to suspect with any reasonable medical probability that [the infection] would have been introduced into Mr. Elswick's wound from the hospital or from Dr. Nichols." Kennedy Supplemental Report, January 29, 2001.

This testimony indicated that the plaintiff lacked the ability to provide evidence of medical causation as required by *Harmon v. Rust*, 420 S.W.2d 563 (Ky.1967). At this juncture, plaintiff is attempting to produce medical testimony through Nurse Darlene Craig, Nurse Donna Adkins, and John C. Hyde, Ph.D., in order to establish causation in this case. The plaintiff's struggle with causation is complicated by this case's history of discovery disputes.

The Court has been forced to resolve numerous arguments between the parties. The plaintiff first involved the Court in these matters by asking for a motion to compel discovery. Magistrate Judge Peggy E. Patterson overruled this motion and assessed attorney fees against the plaintiff [Record No. 29]. The Court was then forced to extend discovery deadlines in order to insure that all of the proper disclosures had been made [Record No. 49]. In this Order, Elswick was warned that "if Plaintiff fails to comply with this Order he will be precluded [from] using these experts at trial." [Record No. 49]. Despite the fact that this Order specifically required the plaintiff to "disclose the information required by Fed.R.Civ.P. 26(a)(2)" [Record No. 49], this Order did not resolve the disputes, and the Court needed to take further action. First, the plaintiff had to be ordered to respond to the defendant's motion to preclude the plaintiff from taking evidentiary depositions [Record No. 54]. The plaintiff did not respond to this direct order and the Court found it necessary to prohibit said depositions and order a status conference [Record No. 61]. On a number of occasions, this Court has made it clear that failure to comply with discovery orders would result in the preclusion of expert testimony.

In order to facilitate just resolutions of conflict, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and case law, must be followed. These rules insure that each party is held up to the same standards, and that evidence is not admissible unless it meets the proscribed level of relevance and reliability.

Therefore, the sufficiency of the plaintiff's evidence regarding causation must be analyzed under two distinct lines of reasoning. First, with regards to the admissibility of expert testimony, the Court must determine whether or not the plaintiff followed this Court's orders and fully complied with the rules of discovery, thus allowing such testimony to be considered as evidence. Second, the Court must review the substantive elements of this expert testimony to resolve two points. Does the expert express an opinion regarding causation, and if so, does the expert have the authority to offer such an opinion to the jury?

The plaintiff must establish admissible evidence of causation to recover on his claims and avoid summary judgment. This standard will be met only if the plaintiff fully complied with discovery orders, and presented expert testimony with re-

---

1. Both parties present arguments on the issue of causation, indicating to the Court that the existence or non-existence of causation evidence will be a determining factor in this case. Therefore, with respect to the analysis of expert testimony and admissibility, the Court will only focus on those aspects relating to the issue of causation.

gard to causation which is reliable and admissible.

## Compliance with Discovery

The disclosure requirements for expert witness testimony are outlined in Federal Rule of Civil Procedure 26(a)(2).

Disclosure of Expert Testimony.

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) These disclosures shall be made at the times and in the sequence directed by the court... Fed.R.Civ.P. 26(a)(2)(emphasis added).

On November 8, 2000, this Court determined that the plaintiff's Rule 26(a) disclosures were "clearly inadequate", and that the plaintiff needed to "disclose the infor-mation required by Fed.R.Civ.P. 26(a)(2) on or before February 28, 2001" or "be precluded [from] using these experts at trial." [Record No. 49]. As this Order clearly determined that Rule 26(a) requirements were unmet prior to November 8, 2000, it is unnecessary to re-evaluate those disclosures. Instead, the Court will test the sufficiency of disclosure made to the defendants after November 8, 2000.

### Donna Adkins

■ The written report from Nurse Donna Adkins was disclosed to the defendants in a filing made on November 30, 2000. In order to comply with Rule 26(a), the report needed to contain "a complete statement of all opinions to be expressed and the basis and reasons therefor" as well as "the data or other information considered by the witness in forming the opinions." Fed.R.Civ.P. 26(a). Adkins' report clearly states that it is not "comprehensive in nature." Adkins's written report, at p. 4.

This fact was further emphasized during her deposition. Adkins expressed the fact that she was unprepared for deposition, and that she had hoped to prepare additional reports, exhibits, and research materials. In fact, Adkins indicated that Plaintiff's counsel led her to believe that she had time, after being deposed, to further expound on her opinions. When asked if she had completed a "comprehensive report", she replied that she had not, but that she would "be happy to do that" as Plaintiff's counsel had "told [her] this is a discovery deposition and [she would] have some time to do a comprehensive—digging into all this..." after the deposition. Adkins' deposition at p. 98. This is clearly in contravention of Rule 26(a), which requires that all of the expert's opinions must be prepared and presented in the written report. This facilitates a comprehensive ex-

amination during deposition. Defense counsel is unable to fully question the expert witness at deposition if the witness has not yet solidified her opinions as they relate to the case.

The very problems Rule 26(a) attempts to avoid are illustrated throughout Adkins' deposition. Adkins admits that, at the time of the deposition, she was only able to provide the defense counsel with "just my opinion" and not the documentation or research to back up her conclusions. Adkins' deposition at p. 98. Adkins was unable to provide information about the rate of infection. She could not estimate when the plaintiff first became infected. She indicated that she planned to "do a very careful time line: When the first cultures were done relative to when the antibiotics were given...and see if the index of suspicion is up there, if that's were that infection came from." Adkins' deposition at p. 84. This testimony would help to establish causation, but the defendants were denied the opportunity to question Adkins regarding her investigation of this factor. Rule 26(a) is designed to prevent this type of "surprise" information at trial. Despite numerous deadline extensions, Plaintiff did not adequately prepare his expert witness, and her reports were not delivered to the defendants before the discovery deadline. Plaintiff Elswick has never provided defense counsel with a written report containing all of Adkins' "opinions to be expressed and the basis and reasons therefor" or "the data or other information considered by the witness in forming the opinions [2]." Fed.R.Civ.P. 26(a).

Therefore, with respect to Expert Witness Adkins, Plaintiff's counsel has so violated the letter and spirit of Fed.R.Civ.P. 26(a) that suppression of this witness' testimony is mandated. The plaintiff has been warned that the non-disclosure of Rule 26 materials would preclude him from presenting expert witnesses at trial. This warning was placed in a docketed Order from this Court on November, 8, 2000. Plaintiff's discovery deadlines were extended to allow Plaintiff to correct the Rule 26 violations in this case. When it was clear that such reports and documentation were not forthcoming, Plaintiff was orally warned about his Rule 26 violations at a status conference held on December 11, 2000. Therefore, Plaintiff has been adequately warned and it would no longer be in the interest of justice to allow Adkins to testify on the plaintiff's behalf as such testimony would unduly prejudice the defendants.

### John C. Hyde, Ph.D.

■ John C. Hyde is a professor at the University of Mississippi Medical Center. He is not a medical doctor, but rather a specialist in hospital administration. He did disclose a written report, but the opinions Hyde expressed were not supported with "the basis and reasons therefor." Fed.R.Civ.P. 26(a). His written report did not include "data or other information considered by the witness in forming the opinion." *Id.*

Hyde's deposition asserts a basic causation theory that the Hospital had an inadequate infection control program and that an appropriate program could have "ultimately prevent[ed]" the infection in question. Hyde's written report at p. 3. Hyde's

2. Adkins' written report lists nationally agreed upon standards of care for nurses. However, under her citation to such guidelines, she states that "[n]ote is taken that the above policy violation represents only one of those found to be in non-compliance and which led to damage to Mr. Elswick." Adkins' report at p. 3. She did not list the other policies, which disadvantages the defense counsel at deposition, and contravenes the dictates of Fed.R.Civ.P. 26(a).

written report states that "the hospital has a duty and obligation to protect the patient public from hospital-acquired infection." Hyde's written report at p. 3. While this reflects a general, ideal standard, it does not indicate the hospital's specific acts or omissions. The report indicated the standard, without identifying how the defendants violated this standard.

Hyde notes that the negligence can be seen in the "obvious facts of this case," but does not identify those facts. *Id.* During his deposition, he could not state for certain that the infection was hospital acquired because he did not know "the cause of all this." Hyde deposition at p. 125. He did not know what caused the injury, and he clearly indicated to the defense counsel that he would not "look to find out" as it was "not [his] role to do that." *Id.* Therefore, Hyde's reported opinion that the hospital had the ability to "prevent [ ] the further spread of any infections attributable to Dr. Nichols," is not supported by any documentation or evidence. Hyde's written report at p. 3. In his written report, and at his deposition, Hyde was unable to provide "the basis and reasons" for his conclusions. Fed.R.Civ.P. 26(a). Furthermore, Hyde did not provide Rule 26(a) "data or other information" to support his conclusion that the defendant should have prevented this hospital acquired infection.

The only specific act of negligence indicated in Hyde's written report is the hospital's failure to "self-report this epidemic." While this is an example of the type of specificity required in an expert's written report, Hyde did not provide support for the conclusion that the hospital could have prevented Elswick's infection. Hyde could not testify about the statistical significance of the two cases of infection in June of 1998 because he still had "to test them"

and did not "have enough information to test them." Hyde deposition at p. 102. He could not testify that it would have been possible to report an "epidemic" in June of 1998, or that such a report would have prevented Elswick's infection because "there's so many variable we don't know about." Hyde deposition at p. 109. Hyde's written conclusion that Elswick's infection could have been prevented by a self-reporting of this "epidemic" is not supported by "data or other information." Fed.R.Civ.P. 26(a). Hyde's medical report gave opinions without the Rule 26 documentation necessary to back them up. Hyde admitted that this lack of documentation prevented him from confidently drawing the conclusion that the defendants could have prevented Elswick's infection. In fact, when asked about his report's conclusion that the hospital could have prevented the infection, Hyde stated, "I don't know. I'm not getting into prevention or anything else." Hyde Deposition at p. 108.

While Hyde's written report addresses a number of other issues in this fashion, his presentation of general standards, followed by broad conclusions, do not represent the type disclosures mandated by Fed.R.Civ.P. 26(a). His report indicates that he prepared his report based on his "training, education, experience, board certification, and professional knowledge", as well as various records utilized in this case. However, Rule 26(a) requires that "[t]he report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions." Hyde's report did not express the basis or reasons for his conclusions regarding causation, and did not support his conclusions with any data or documentation. This represents a violation of

Fed.R.Civ.P. 26(a)[3], as well as a violation of this Court's direct orders to the plaintiff's counsel.

*Darlene Craig*

■ When a complaint is received by the Commonwealth of Kentucky Department of Health Services, Nurse Craig is dispatched to the health care institution to investigate any potential health code violations. Craig was sent to investigate the defendant hospital, and she ultimately issued a report in June 22, 1999. Her report concluded that the hospital "permitted a surgeon with a positive culture for MRSA to return to the practice of surgery, prior to obtaining a negative culture as recommended by the Infectious Disease Specialist." Craig deposition, Exhibit 1 at p. 5. In essence, Craig's report determined that a violation occurred when Dr. Nichols returned to perform surgery at the defendant hospital on November 23, 1998, prior to obtaining his negative culture on December 1, 1998. This violation took place almost five months after Elswick's surgery and involved a strain of infection (MRSA) which was not found to be present in the culture of the plaintiff's injury. Craig's report did not mention Plaintiff Elswick and Craig did not know if the hospital experienced any other problems prior to November of 1998. Craig deposition at p. 33.

The plaintiff's counsel submitted a copy of this report to the defense counsel. However, the defendants were never provided with Craig's qualifications, a list of her publications, any information regarding previous testimony by her, or a list of items that she reviewed in this case. Finally, there is no written report expressing Craig's opinions about the causation of Plaintiff Elswick's injury[4]. Discovery in this case is now closed. Clearly, these omissions indicate a substantial violation of Fed.R.Civ.P. 26(a). Therefore, Craig is unable to testify in this case as an expert witness because disclosures on this matter are clearly inadequate with respect to Rule 26(a).

### Substance of Expert Witness Testimony

■ Often "there is difficulty in proving causation in malpractice cases because the proof rests largely upon the technical nature of the subject matter involved." *Johnson v. Vaughn,* 370 S.W.2d 591, 597 (Ky.1963). Kentucky has determined that it is "generally held that circumstantial evidence may be sufficient to prove reasonable probability or proximate cause where the evidence reasonably establishes a causal connection between the alleged negligence and the injury." *Id.* Therefore, each witnesses' testimony must be reviewed to determine if allegations of causation have been made. If so, the Court, as gatekeeper, must insure that the witness has the ability to testify as to such matters under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

---

3. Additionally, Hyde's written report states that the report "should not be construed as the total set of examples that I have documented in my review, rather it is presented to provide a representative picture of the situation..." Hyde's written report at p. 2. This approach contravenes Rule 26(a)'s requirement that the written report contain "a complete statement of all opinions" to be expressed by the expert. Fed.R.Civ.P. 26(a).

4. Plaintiff's counsel does not dispute that these items were never filed, but instead indicates an intention to "file a Motion for leave to supplement" their disclosures, alleging that such late disclosures will not prejudice the defendants "in any way." Record No. 107 at pgs. 1–2. The Court disagrees with the plaintiff regarding prejudice to the defendants and notes that the plaintiff was warned that failure to file the proper Rule 26(a) disclosures would preclude Plaintiff from presenting expert witnesses at trial.

■ An expert may be qualified through "knowledge, skill, experience, training, or education". Fed.R.Evid. 702. The qualification, however, must match up with the subject matter about which the expert is to testify; for example, an aeronautical engineer could testify about how bees fly based on his education and training in flight principles, but that same engineer could not testify about whether bees always take off into the wind because his training in aeronautics would not qualify him to answer that question. However, a beekeeper who studied bees and their flight patterns would be an appropriate expert because of his first hand knowledge and experience in that subject matter; similarly, the beekeeper would not be an appropriate expert to testify about how planes fly because he has no training or expertise in aeronautics. *See Berry v. City of Detroit,* 25 F.3d 1342, 1350 (6th Cir.1994), *cert. denied,* 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995).

Thus, as the Sixth Circuit stated in *Berry,* "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Id.* at 1351; *see also* Moore's Federal Practice, Reference Manual on Scientific Evidence 58 (Matthew Bender ed., 1995) (stating that "before the expert is found qualified to offer an opinion about a particular issue, the court must also decide whether the *actual qualifications* of the expert enable him or her to assist the trier of fact with regard to *each controverted issue about which the expert seeks to testify* ") (emphasis added).

*Daubert* held that the trial court was to play the role as the gatekeeper and decide whether the proposed expert met the qualification under Fed.R.Evid. 702. The Supreme Court emphasized that "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable". *Daubert,* 113 S.Ct. at 2795. "Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert,* 509 U.S. at 588, 113 S.Ct. 2786.

*Donna Adkins*

■ During her deposition Adkins essentially testified that the plaintiff's infection was caused by "sloppy" nursing practices. Adkins' deposition at p. 65. She indicated that the hospital staff did not take "precautions with gloves" and did not "double glove" the individuals who operated on Elswick. *Id.* at pgs. 42, 52. In addition, she alleges that the hospital did not follow "universal precautions" and use sterile dressings. *Id.* at 53. Adkins also feels that the hospital should have isolated Elswick to "prevent infection." *Id.* at 59. Adkins identified these actions as breaches of a nurses' standard of care. The Court does not find issue with Adkins testimony on this subject. She is certified and qualified to indicate what a nurse's responsibility is, and what standard of care they are held to. However, Adkins went on to offer conflicting testimony regarding causation.

She noted that the nurses "breached the standard of care" and that in her "opinion [ ] the index of suspicion is very high that this breach led to this man developing the nosocomial [i.e.: hospital acquired] infection..." Adkins' deposition at p. 64. Adkins was adamant that the "nurses breached" their standard of care, and that the infection was "due to the breach" and that this causal connection is supported by a "high index of suspicion." *Id.*

However, while Adkins is in a position to indicate which actions amount to a breach of a nurse's standard of care, she is not automatically qualified to testify that said breaches caused the infection at question.

Causation is a separate legal question. Adkins' strong opinions regarding causation do not qualify her as an expert on this point. Adkins admits as much during her deposition. She acknowledged that she is "not an infectious disease physician." Adkins' deposition at p. 45. She noted that she cannot "be the one to say" how Elswick received the infection "because that's a medical diagnosis" which is "outside [her] area of expertise." *Id.* at 46.

Therefore, Adkins' testimony regarding the "high index of suspicion" [*Id.* at 64] could be found to satisfy the requirement for "circumstantial evidence...sufficient to prove reasonable probability." *Johnson v. Vaughn,* 370 S.W.2d 591, 597 (Ky.1963). However, her testimony on causation is outside her knowledge as an expert witness and such testimony would be akin to a beekeeper testifying about the physics of an airplane's flight. Therefore, Adkins is not qualified to testify on this matter. *Berry v. City of Detroit,* 25 F.3d 1342, 1350 (6th Cir.1994).

*John C. Hyde, Ph.D.*

■ Hyde essentially testified that Elswick's infection was caused by the hospital's lack of administrative procedures with regards to the control of infectious organisms. Hyde felt that the defendants, "from a procedural standpoint," did not have anything "to guide them" during an infection epidemic. Hyde deposition at p. 73. From this determination, he concluded that there is a "high probability" that Elswick contracted the infection because the hospital lacked such policies. *Id.* at p. 82.

Hyde further testified that this causation analysis could be conducted without further medical testimony because he had "been in the field for a long time" and that "there are some probabilities out there medically that have been established before." *Id.* He felt that his past research made him knowledgeable to testify about "the variables that have been shown in the past to be predictive." *Id.* However, in his very next sentence, Hyde directly indicated that he "can't" testify as to how Paul Elswick contracted his infection. *Id.* at 83.

Hyde went on to establish that he could not testify regarding substantive causation, but that he could testify regarding the "probabilities" in this case. *Id.* Hyde testified that there is a "very high probability—more likelihood than not that Dr. Nichols was involved and the hospital was involved in the sequence of events to virtually infect Mr. Elswick." *Id.* at 86. However, Hyde continued to emphasize that he could not indicate how Elswick received the infection because that was not part of his expertise. *Id.* at 79. He went so far as to state that he could not testify as to the "cause of all this." *Id.* at 125. He did not "know" the cause, was not "trying to tell" defense counsel what caused the infection, and that he will not "look to find out" the cause because it was "not his role" to do that. *Id.*

He did, however, attempt to indicate that there was a statistically significant probability that the hospital's lack of administrative policies caused the infection. Hyde's hypothesis was that "you don't wait until you conclusively prove that there is an epidemic until you do something. You do it preemptively." *Id.* at 100. Hyde testified that "there may have been a need to do some reporting in June." *Id.* at 104. Hyde indicated that reporting the epidemic in June would have prevented anyone else (presumably the plaintiff) from becoming infected. Effective administrative procedures would have resulted in the hospital's ability to issue a report in June.

When pressed on this issue, Hyde indicated that two cases of infection arose in June, 1998. *Id.* at 103. Hyde testified

that two cases indicate a "spike" in infection rates, which should have put the hospital on notice of an epidemic. *Id.* at 105. However, it is unclear if Elswick, who was infected in June of 1998, was one of the two cases which should have placed the hospital on notice. If so, Elswick would have become infected before the hospital was under an obligation to report the epidemic. When asked what the hospital should have done in relation to Elswick, Hyde answered that the defendants should have "cultured him." *Id.* at 107. However, such a response would indicate that Elswick would have already contracted the infection, and such action on the part of the hospital would in no way have prevented Elswick's injuries. From here, Hyde backpedaled and indicated that he was "not getting into prevention" and that he could not definitively state that such actions on the part of the hospital "would" or "wouldn't have" prevented or caused the injury. *Id.* at 108–109.

■ Hyde's testimony presents some inconsistencies that must be addressed. First, Hyde cannot testify regarding the medical causation at issue, but he feels that he is qualified to testify regarding the probability that infection was caused by the lack of administrative policies. Second, while Hyde attempts to explain the statistical significance of the two June, 1998, infection cases, he is unable to testify regarding the statistical significance of the patient population in this scenario because he did not know "the number of variables." *Id.* at 102. Third, while pinning causation on a lack of administrative policies, he later admits that he cannot testify that the administrative methods he endorses would have prevented the infection in Elswick. The Court must insure that all expert testimony is "not only relevant, but reliable".

*Daubert,* 113 S.Ct. at 2795. Hyde does not provide appropriate validation to express this causation analysis to a jury. His inconsistent testimony, and inability to provide concrete support for his assertion that there was a very high probability that Dr. Nichols and the hospital caused the infection, renders his opinion unreliable. Therefore, it is not admissible as a medical expert opinion regarding causation as required by *Harmon v. Rust,* 420 S.W.2d 563 (Ky.1967).

*Darlene Craig*

■ The report and deposition testimony from Craig focuses on events which occurred after the plaintiff was diagnosed with his infection. Her testimony does not establish causation, but actually works to refute some of the plaintiff's attempts prove causation. Craig testifies that she did not "find a problem as far as the facility having an infection control plan", she felt that the hospital's plan was "conducted appropriately." Craig deposition at p. 17. This works against allegations made by Dr. Hyde. In fact, Craig states that she did not find a "problem with anything else other than MRSA or it would be documented" in her report[5]. *Id.* at 26.

Craig does not attempt to testify that any breach by the hospital or Dr. Nichols caused Elswick's infection. This testimony was not presented in her report, nor was it discussed during her deposition. Discovery has since closed, and Craig has not produced any additional evidence regarding causation. Therefore, she is not qualified to testify regarding causation in this case.

### Conclusion

The plaintiff's witnesses have not produced any admissible evidence relating to

---

5. The only reported violation involved the fact that Dr. Nichols returned to work eight days before receiving notification that he was no longer infected with MRSA.

causation. None of the three proffered witnesses are credible to testify. Each is precluded from testifying due to disclosure violations which fail to meet the requirements of Fed.R.Civ.P. 26(a). In addition, none of the witnesses are qualified to discuss causation. The opinions set forth fail to present admissible evidence. Therefore,

**IT IS ORDERED**

(1) That Defendants' motion to strike Plaintiff's expert witnesses [Record No. 101] be, and the same hereby is, **GRANTED;**

(2) That Defendants' motion for summary judgment [Record No. 102] be, and the same hereby is, **GRANTED;**

(3) That Plaintiff's motion to alter, amend, or vacate [Record No. 104], be, and the same hereby is, **DENIED;**

(4) That this case be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET.**

### *ORDER*

In accordance with the Memorandum Opinion and Order of even date and entered contemporaneously herewith,

**IT IS HEREBY ORDERED:**

(1) That this action be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET.**

(2) That all pending motions be, and the same hereby are, **DENIED AS MOOT.**

(3) That all scheduled proceedings be, and the same hereby are, **CONTINUED GENERALLY.**

(4) That this Order is **FINAL AND APPEALABLE** and **THERE IS NO JUST CAUSE FOR DELAY.**