**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0485n.06

**FILED**
**Aug 06, 2010**
LEONARD GREEN, Clerk

**No. 09-3597**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

BARBARA ROSE; ROBERT ROSE,

      Plaintiffs-Appellants,

v.

TRUCK CENTERS, INC., et al.,

      Defendant,

and

TRW AUTOMOTIVE, U.S., LLC,

      Defendant-Appellee.

                        /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

OPINION

**BEFORE:**    **CLAY, ROGERS, and COOK, Circuit Judges.**

    **CLAY, Circuit Judge.**  Plaintiffs Barbara and Robert Rose appeal an order entered in this

products liability action by the district court granting Defendant TRW Automotive, U.S., LLC's

motion for summary judgment based on the inadmissibility of Plaintiffs' expert's testimony. In

granting summary judgment, the district court concluded that Plaintiffs' expert was not a qualified

expert under Federal Rule of Evidence 702 and that the proffered expert's opinion was unreliable.

For the reasons set forth below, we **AFFIRM** the district court's decision.

## I. BACKGROUND

### A. Factual Background

Defendant TRW Automotive U.S., LLC ("TRW") is a new and re-manufactured parts supplier for the automotive industry, providing, *inter alia*, steering gears. As part of its re-manufacturing process, Defendant uses oiled valve housing bolts to secure the valve housing to the steering gear and the bolts are torqued to 75 to 91 foot pounds in accordance with Defendant's specifications for steering gears. Each steering gear is subjected to various leak tests, which it must pass in order to be shipped. If, and only if, a re-manufactured steering gear passes the leak tests, a serial number is stamped on the gear and the gear is shipped to Defendant's customers.

On May 6, 2006, Plaintiffs Robert Rose and his wife Barbara had a traffic accident as they were traveling southbound on I-75 near Toledo, Ohio. Robert was driving the couple's 1997 Freightliner truck as Barbara rode in the sleeper compartment. From October 2005 to December 2005, maintenance had been performed on the truck to repair damage from a previous accident that occurred in October 2005. These repairs included replacement of the steering gear with one of Defendant's re-manufactured steering gears, which Truck Centers, Inc. installed in Troy, Illinois in December 2005. After the December 2005 repairs, Plaintiffs drove the truck to their home in Stanton, Kentucky, where it remained until the couple embarked on a series of trips in May 2006.

Plaintiffs allege that the truck's steering "gave out" and the truck "crashed into the median resulting in injuries" to Barbara. (Compl. ¶ 1.) Robert Rose testified that his truck "just went where it wanted" and was "free wheeling." (Robert Rose Dep. 48.) He described "free wheeling" as turning the steering wheel rapidly without any response by his truck. After the accident, the Roses'

truck was towed to the Toledo Police Department impound lot and a few days later, to a Freightliner dealer in Toledo. The truck was subsequently towed to the Roses' home in Stanton, Kentucky and arrived May 13, 2006.

Mr. Rose testified that the truck was working perfectly right up until the moment of the accident, at which point Mr. Rose stated that the truck "free wheeled" and veered to the left. At the time of the accident, Mr. Rose had driven the truck, without incident, some 6,000 miles since replacement of the re-manufactured steering gear. Mr. Rose also confirmed that prior to leaving Oakville, Ontario, Canada the morning of May 6, 2006, he inspected the truck and found no problems with either the steering gear or the valve housing bolts.

Plaintiffs presented Philip Smith, an ASE certified truck mechanic, as their expert. Smith testified that he was an expert in the areas of "[t]ruck mechanical issues, electronic control modules, driver issues, logs, hiring practices, [and] heavy hauling" and an expert in steering gears. (Smith Dep. 164.) Smith received a diploma from Denver Auto & Diesel College, completing a steering gears course during his training. Smith testified that in the steering gears course he learned how steering gears operate and learned "diagnosis and overhaul and repair." (Smith Dep. 167.) Smith also testified that he attended one Freightliner seminar in 1986 that provided training on Defendant's steering gears.

In conducting his inspection of Plaintiffs' truck on November 10, 2006, Smith noted that the valve housing bolts were "extremely loose" and noted the number of revolutions it took for him to

remove them.[1] (Smith Report 2.) In his report, Smith concluded that "the cause of [the] accident was the loss of power steering fluid due to . . . loose valve housing bolts." (Smith Report 4.) Smith's report stated that "[w]ith the bolts coming loose, the pressurized [power steering] fluid would quickly escape leaving the driver without the benefit of power steering" and that "with the valve housing bolts in their loosened condition, Mr. Rose would have [had] to turn the steering wheel approximately 225 degrees before the tractor[-trailer] would [have] beg[un] to respond to his steering inputs." (Smith Report 4.)

Smith testified that the accident was likely caused by a defective re-manufactured steering gear. In particular, Smith testified that: (1) Defendant failed to properly torque the valve housing bolts that seal the steering gear; (2) the bolts became loose as a result of road vibrations; (3) the truck lost power steering fluid as a result of the bolts becoming loose; and (4) Robert Rose began "freewheeling" and lost control of the truck, causing the accident.

**B.      Procedural History**

On October 17, 2007, Plaintiffs filed individual federal diversity actions against Truck Centers, Inc., Freightliner, LLC, and TRW Automotive U.S., LLC, alleging negligence, strict liability, and statutory liability against each party and requesting punitive damages with respect to each party. The cases were consolidated. Truck Centers, Inc. and Freightliner, LLC both filed motions for summary judgment, which were granted without opposition.

---

[1]Plaintiffs produced a photograph dated July 8, 2006 showing that at least one of the valve housing bolts was, at the time the photograph was taken, completely separated from the steering gear. However, when Smith conducted his inspection, the bolts were threaded into the steering gear.

Defendant subsequently moved for summary judgment on January 5, 2009, arguing that Smith's opinions regarding the cause of the accident constituted inadmissible evidence and that because Smith's opinions were the only evidence Plaintiffs had to support their case, Plaintiffs could neither meet their burden of proof nor satisfy the requirements for a *prima facie* case of products liability. The district court held a hearing on Defendant's motion for summary judgment at which Plaintiffs conceded that without Smith's testimony, summary judgment would be appropriate in this case.

On April 24, 2009, the district court granted Defendant's motion for summary judgment, concluding that Smith was not qualified as an expert under Federal Rule of Evidence 702 and that Smith's opinion was inadmissible under Rule 702 because it was unreliable. On May 13, 2009, Barbara Rose filed a motion for relief from judgment, arguing that "a jury could still reasonably conclude that the steering gear was defective without expert testimony." (Pl.'s Mot. for Relief from J. Pursuant to Fed. R. Civ. P. 60(b) 3.) The next day, Plaintiffs filed a notice of appeal of the district court's April 24, 2009 order granting summary judgment in favor of Defendant. On June 17, 2009, the district court denied Barbara Rose's motion for relief from judgment.

## II. DISCUSSION

### A.    Standard of Review

This Court reviews *de novo* a district court's grant or denial of summary judgment. *Seaway Food Town, Inc. v. Med. Mut. of Ohio*, 347 F.3d 610, 616 (6th Cir. 2003). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The burden is initially upon the moving party to show that there does not remain in dispute any genuine issue of material fact. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006). The moving party may satisfy this burden by pointing out to the district court that there is no evidence underlying the non-moving party's case. *Id.* Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts indicating the existence of a genuine issue to be litigated. Fed. R. Civ. P. 56(e). When a court thereafter reviews the record, it is to draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the proper inquiry is whether the state of the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

This Court reviews a district court's decision to admit or exclude evidence for an abuse of discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 258 (6th Cir. 2001). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Ky. Speedway, LLC v. Nat'l Assoc. of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 915 (6th Cir. 2009) (quoting *Brown v. Raymond Corp.*, 432 F.3d 640, 647 (6th Cir. 2005)) (citation and internal quotation marks omitted). We will only reverse for an abuse of discretion where we are left with "the definite and firm conviction that the district court made a clear error of judgment in its conclusion." *Gaeth v.*

*Hartford Life Ins. Co.*, 538 F.3d 524, 528 (6th Cir. 2008) (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006)) (internal quotation marks omitted).

## B.     Analysis

In order to establish the elements of a product liability claim under Ohio law, a plaintiff must show that "(1) there was a defect in the product manufactured and sold by the defendant, (2) the defect existed at the time the product left the defendant's control, and (3) the defect was the direct and proximate cause of the plaintiff's injuries or losses."[2] *Donegal Mut. Ins. v. White Consol. Indus., Inc.*, 852 N.E.2d 215, 220 (Ohio Ct. App. 2006) (citing *State Farm Fire & Cas. Co v. Chrysler Corp.*, 523 N.E.2d 489, 493 (Ohio 1988)). Defendant contends that Plaintiffs are unable to establish any of the three elements because Plaintiffs' expert testimony is inadmissible.

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify" if the witness' testimony is "based upon sufficient facts or data, . . . is the product of reliable principles and methods, and . . . the witness has applied the principles and methods reliably to the facts of the case." Rule 702 was amended in 2000 in response to *Daubert v. Merrill Dow*

---

[2]Neither party disputes that Ohio law applies since the accident occurred in Toledo, Ohio. In Ohio, a "product liability claim" describes a civil claim seeking to recover compensatory damages from a manufacturer or supplier for death, physical injury, emotional distress, or physical property damage (other than the product in question) arising from: (1) "[t]he design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product"; (2) "[a]ny warning or instruction, or lack of warning or instruction, associated with that product"; or (3) "[a]ny failure of that product to conform to any relevant representation or warranty." Ohio Rev. Code § 2307.71(A)(13).

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

"In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science." Fed. R. Evid. 702 advisory committee's notes. *Daubert* attempts to strike a balance between liberal admissibility for relevant evidence and the need to exclude misleading "junk science." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009) (internal quotation marks omitted). An expert must utilize in the courtroom the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 177.

Determining the admissibility of expert testimony pursuant to Rule 702 entails a flexible inquiry. *Daubert*, 509 U.S. at 594. As a gatekeeper, the trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007); *see Daubert*, 509 U.S. at 589 ("[U]nder the Rules [of Evidence] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.") "In short, under *Daubert* and its progeny, a party proffering expert testimony must show by a preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008) (citing *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000)) (internal quotation marks omitted).

### 1.     Smith's Qualifications

In order to qualify as an expert under Rule 702, a witness must establish his or her expertise by reference to "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Although this requirement is typically treated liberally, a witness is not an expert simply because he claims to be. *Pride*, 218 F.3d at 577. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). In *Berry*, the Court delineated by analogy the kinds of testimony witnesses are qualified to give based upon their expertise—scientific or technical:

> The distinction between scientific and non-scientific expert testimony is a critical one. By way of illustration, if one wanted to explain to a jury how a bumblebee is able to fly, an aeronautical engineer might be a helpful witness. Since flight principles have some universality, the expert could apply general principles to the case of the bumblebee. Conceivably, even if he had never seen a bumblebee, he still would be qualified to testify, as long as he was familiar with its component parts.
>
> On the other hand, if one wanted to prove that bumblebees always take off into the wind, a beekeeper with no scientific training at all would be an acceptable expert witness *if* a proper foundation were laid for his conclusions. The foundation would not relate to his formal training, but to his firsthand observations. In other words, the beekeeper does not know any more about flight principles than the jurors, but he has seen a lot more bumblebees than they have.

*Id.* at 1349-50.

Smith testified that he was an expert in the areas of "[t]ruck mechanical issues, electronic control modules, driver issues, logs, hiring practices, [and] heavy hauling" and an expert in steering gears. (Smith Dep. 164.) Defendant argues that Smith's education and experience do not provide him with the requisite qualifications to offer opinion on product defect or causation. Plaintiffs

counter that the absence of a proffered expert's qualifications "almost always bears on the weight that the jury should assign to the [expert's] testimony and *not* on the admissibility of the testimony itself." (Appellants' Br. 10.)

The district court concluded that Smith's testimony exceeded the scope of his expertise. Specifically, the court pointed to Smith's opinion regarding the cause of the accident and Smith's conclusion that the steering gear was defective. The district court found that Smith lacked the formal education, training, and experience to offer an opinion regarding whether the steering gear was defective and concluded that Smith failed to demonstrate that he possessed any more knowledge about mechanical engineering principles than an average juror.

However, as this Court has stated, "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984). The record in this case shows that Smith was qualified as an expert since his testimony would certainly assist the trier of fact in understanding the evidence. Smith's experiences as a mechanic give him specialized knowledge in the areas of truck mechanics and steering gears and, in his deposition testimony, enabled Smith to thoroughly discuss the process of torquing the steering gear bolts and how a misstep in that process could affect the integrity of the steering gear and possibly result in an automobile accident. Accordingly, we conclude that Smith was qualified as an expert, at least for some purposes, pursuant to Rule 702.

Contrary to the district court's conclusion, this Court's opinion in *Sigler v. American Honda Motor Co.*, 532 F.3d 469 (6th Cir. 2008), does not alter our conclusion.[3] In *Sigler*, the plaintiff's expert provided opinion, via a report and a sworn declaration, regarding the speed at which the vehicle involved in the accident likely struck a tree and the possible cause for the failure of the vehicle's airbag to deploy. The trial court in *Sigler* granted Defendant's motion *in limine* excluding Plaintiff's proffered expert, a mechanic with twenty-six years' experience repairing and diagnosing automobile problems.

This Court upheld the exclusion of the expert's testimony in *Sigler* because the issue of the car's speed at the time of the accident involved accident reconstruction, an area in which the expert had no training. The Court noted that the mechanic was an expert with regard to analyzing an automobile after an accident, but concluded that he lacked the expertise to render opinion about an airbag defect *without physically examining the vehicle*, which he had failed to do. This case is distinguishable from *Sigler* because here, Plaintiffs' expert did physically examine the alleged faulty product. Despite Smith's qualifications, however, we conclude that the district court did not abuse its discretion in excluding Smith's opinion because, as explained below, Smith's opinion was unreliable.

---

[3]The district court also relied on *Elswick v. v. Nichols*, 144 F. Supp. 2d 758 (E.D. Ky. 2001), a medical malpractice case, in support of its conclusion regarding Smith's qualifications. However, in *Elswick*, the plaintiff's expert admitted that causation was outside her area of expertise, 144 F. Supp. 2d at 767, whereas here, Smith has made no such admission.

## 2.    Reliability

Federal Rule of Evidence 702 requires an expert witness to testify as to "scientific, technical, or other specialized knowledge."  As the Supreme Court in *Daubert* noted, this requirement establishes a standard of "evidentiary reliability" or "trustworthiness." 509 U.S. at 590 n.9.  District courts must determine whether "the principles and methodology underlying the [proffered expert's] testimony itself are valid." *Pride*, 218 F.3d at 577.

As the district court correctly noted, the reliability inquiry focuses "solely on the principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 594-95.  Expert testimony may not be based on mere speculation, *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000), and assumptions must be supported by evidence in the record.  *See Sigler*, 532 F.3d at 481-82.  An expert's conclusions regarding causation must have an established factual basis and cannot be premised on mere suppositions. *McLean*, 224 F.3d at 801.  "[M]ere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *Id.* (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)) (alteration in original).

The Court in *Daubert* set out several factors to be considered in determining whether a proffered expert's testimony is reliable: the testability of the expert's hypotheses, whether the expert's methodology has been subjected to peer review and publication, the known or potential rate of error with respect to the expert's methodology, and whether the methodology is generally accepted in the scientific community.  *Daubert*, 509 U.S. at 593-94.

In this case, Smith admitted that he engaged in no testing to replicate his theory of what occurred during the accident. He also could not identify any tests by another person demonstrating how the bolts would suddenly loosen in the manner he describes after thousands of miles of normal operation. Smith admitted that he knew of no other instance where the bolts on a steering gear came loose in the manner commensurate with his theory. Moreover, vibration is a critical component of Smith's theory, yet he conducted no testing to determine the vibration level of Plaintiffs' truck or similar trucks.

Smith first inspected the steering gear at Plaintiffs' home in November 2006, six months after the accident. According to Smith, upon inspecting the steering gear, "the four valve housing bolts were extremely loose to the point that 3 of the bolts required slightly more than one turn to completely remove them and the fourth bolt took approximately two and one-half turns to remove it." (Smith's Report 2.) Smith obtained an exemplar of Defendant's re-manufactured steering gear and loosened the valve housing bolts to the same degree as Plaintiffs' steering gear, eventually concluding that the steering wheel would have to be rotated 225 degrees before the tractor-trailer's front tires would begin to move.

Accordingly, Smith's conclusions in his report are based on the assumption that on the day he inspected the steering gear, the bolts were at the precise degree of looseness that they were at the time of the accident. However, as the district court correctly noted, a photograph of the steering gear taken in July 2006 indicates that the position of the bolts was altered between the time of the accident and Smith's examination. Specifically, the photograph shows that at least one of the bolts was completely separated from the steering gear and not even partially fastened as it was in

November 2006 at the time of Smith's inspection. Plaintiffs contend that the district court failed to understand that the bolts "were 'actually worse' or *more* loose" in the photograph than when Smith inspected the truck. (Appellants' Br. 24.) Consequently, argue Plaintiffs, the photograph does not detract from Smith's opinion that the loose bolts caused Plaintiffs' loss of steering capabilities.

We disagree. First, we note that determining the weight that should be afforded to Smith's testimony is a function that clearly belongs in the realm of the trier of fact. However, where, as in this case, evidence has been altered, such evidence cannot reliably support the expert's conclusion. Smith testified that based on the photograph, he had no way of knowing whether the bolts were in the same position when he inspected them as they were at the time of the accident. Smith also acknowledged that his opinion that the alleged defective steering gear caused Plaintiffs' accident was based on his assumption that the bolts had the same degree of tightness that they had at the time of the accident. Smith further stated that at the time of his inspection, he was unaware that the positions of the bolts when he inspected them differed from their position at the time of the accident. Consequently, because Smith's assumption regarding the degree of tightness of the bolts on the steering gear is not only unsupported, but contradicted by evidence in the record, his conclusions regarding the steering gear's alleged defect and the causation of the accident are unreliable. *See Sigler*, 532 F.3d at 481-82. Therefore, by excluding the expert's testimony, the district court properly exercised its gatekeeping function under *Daubert* and *Kumho*. *See* 509 U.S. at 592-93 *and* 526 U.S. at 147.

Because the evidence underlying Smith's conclusion regarding defect and causation had been altered prior to his inspection and evaluation, the district court did not abuse its discretion in

excluding Plaintiffs' expert's testimony. Accordingly, since the only evidence proffered by Plaintiffs regarding product defect and causation is Smith's unreliable—and thus inadmissible—testimony, we conclude that the district court properly granted summary judgment in favor of Defendant.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment for Defendant.